Justice Alito,
with whom Justice Ginsbueg joins, dissenting.
The decision of the Court fails to follow the clear language of 18 U. S. C. § 1512(a)(1)(C). Instead of heeding the statutory text, the Court has effectively amended the statute by adding a new element.
I
As relevant here, § 1512(a)(1)(C) makes it a federal crime “to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer ... of the United States of information relating to the commission or possible commission of a Federal offense.” Also important for present purposes is § 1512(g)(2), which provides, among other things, that “[i]n a prosecution for an offense under this section, no state of mind need be proved with *686 respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government.”
Putting these two provisions together, what had to be shown in the present case was as follows:
(1) Fowler killed Officer Horner,
(2) with the intent to prevent any person (i. e., either Officer Horner or someone else) from communicating,
(3) to a person who (whether or not known as such to Fowler) was a federal law enforcement officer,
(4) information concerning the possible commission of a federal crime.
The question before us is whether there was sufficient evidence to support Fowler’s conviction, and thus we must ask whether- any rational jury could find that all of the elements noted above were adequately established. See United States v. Powell, 469 U. S. 57, 67 (1984).
There can be no dispute that there was sufficient evidence to establish elements (1), (2), and (4). That is, there was ample evidence to show (1) that Fowler killed Officer Horner, (2) that he did so with the intent to prevent the communication of information about what Officer Horner had seen, and (4) that this information concerned the possible commission of at least one federal crime — for example, conspiracy to rob a bank in violation of 18 U. S. C. §§ 371, 2113.
Thus, the only remaining question is whether there was enough evidence to permit a rational jury to infer that element (3) had been satisfied. And in connection with this question, it is important to keep in mind three things that element (3) does not require.
First, element (3) does not demand proof that Officer Horner, had he not been killed, would have reported — or even might have reported — what he saw to anyone, much less to a federal officer. Element (3) is solely concerned with a defendant’s intent.
Second, while element (3) requires proof that Fowler intended to prevent some law enforcement officer from learn *687 ing what Officer Horner had seen, element (3) does not require proof that Fowler had any particular law enforcement officer in mind. Section 1512(a)(1)(C) simply demands that the recipient of the information be “a law enforcement officer.” Thus, it would be enough if Fowler’s intent was to prevent Officer Horner’s information from reaching any federal law enforcement officer.
Third, element (3) does not demand proof that Fowler knew that the generic officer noted above was a federal, as opposed to a state or local, law enforcement officer. Section 1512(g)(2) specifically rules out any such requirement. It is enough that our generic officer was in fact a federal officer.
When the meaning of element (3) is understood, it is clear that the decision of the Court of Appeals in this ease must be affirmed. A rational jury could infer that Fowler’s intent was to prevent information about what Officer Horner had seen from reaching any person who could bring about his arrest and conviction. In other words, a rational jury could infer that Fowler, in effect, had in mind a set of law enforcement officers (whose identities were unknown to him) who could set in motion a chain of events that would land him in prison. And since the information that Officer Horner possessed related to, among other things, the possible commission of a federal crime, a rational jury could infer that this group included law enforcement officers who were employed by the United States. The question presented in this case is as simple as that.
II
The Court begins on the right track, observing that the “relevant question concerns the defendant’s intent” and that therefore “the Government need not show beyond a reasonable doubt (or even that it is more likely than not) that the hypothetical communication would have been to a federal officer.” Ante, at 674 (emphasis in original). But the Court veers off course when it goes on to hold that the prosecution was required to show that, if Officer Horner had not been killed, there was a “reasonable likelihood” that his informa *688 tion would have reached a federal officer. Ante, at 677 (emphasis in original).
The Court reaches this conclusion based on the meaning of the word “prevent." See ante, at 674-678. The Court starts with the proposition that “apart from mistakes ... one cannot act with an 'intent to prevent’ something that could not possibly have taken place regardless.” Ante, at 674 (emphasis in original). I understand this to mean that a rational person will not take action to prevent something that the person knows is not possible. This is true, but it does not follow that a rational person will not take action to prevent an undesirable event unless the event is “reasonably likely.” Risk-averse people do this all the time. They refrain from flying to avoid dying in a plane crash. They shun rooms on the upper floors of hotels to prevent being trapped in the event of a fire.
What matters under § 1512(a)(1)(C) is not the likelihood that information about a possible federal crime will be conveyed to a federal officer. What matters is the intent of the person who kills or attempts to kill in order to prevent that information from reaching such an officer. The Court’s “reasonable likelihood” test has no basis in the text of § 1512(a)(1)(C).
The Court’s test also makes little sense. Under this test, the application of § 1512(a)(1)(C) depends on a witness-killer’s toleration of risk. According to the Court, § 1512(a) (1)(C) does not reach a killer who has so little regard for human life that he or she is willing to murder in order to prevent even a remote possibility that a witness will inform the authorities. It is hard to imagine why Congress would have wanted to draw this line.
Ill
Justice Scalia’s interpretation of § 1512(a)(1)(C) also has no grounding in the language of the statute. He makes the fundamental mistake of confusing § 1512(a)(l)(C)'s mens rea *689 and actus reus elements. Justice Scatja states that what he terms “the ‘federal officer’ requirement” is “an element of the actus reus,” ante, at 679 (opinion concurring in judgment), but the text of the statute makes it perfectly clear that “the ‘federal officer’ requirement” is exclusively an element of the defendant’s mens rea.
The statute provides:
“(a)(1) Whoever kills or attempts to kill another person, with intent to—
“(C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
“shall be punished as provided in paragraph (3).” § 1512(a)(1)(C) (emphasis added).
The actus reus of this provision is set out in its first eight words (“Whoever kills or attempts to kill another person”). Everything else — that is, everything that follows the phrase “with intent to” — concerns the defendant’s mens rea.
Justice Scalia interprets § 1512(g)(2) as transforming “the ‘federal officer’ requirement” from an element of the mens rea into an element of the actus reus, see ante, at 679-680, but this reading is plainly wrong. Section 1512(g)(2) provides in relevant part:
“In a prosecution for an offense under [18 U. S. C. § 1512], no state of mind need be proved with respect to the circumstance .. . that the law enforcement officer is an officer or employee of the Federal Government.”
What this clearly means, as the Court recognizes, see ante, at 672-673, is simply that a defendant need not intend to prevent a qualifying communication from reaching an officer whom the defendant knows to be a federal, as opposed to a *690 state or local, law enforcement officer. But nothing in this provision adds to the actus reus elements in § 1512(a)(1)(C).
Justice Scalia’s principal criticism of my interpretation of the statute is that “it makes the words ‘of the United States’ superfluous.” Ante, at 683.[1] He incorrectly states that under my interpretation “the Government need not prove anything with respect to the fact that the communication sought to be prevented was ‘to a law enforcement officer ... of the United States’ ” and that “[a]s long as the Government can prove that the defendant sought to prevent the communication of information about a federal crime (including a federal crime that is also a state crime) it will necessarily have proved that [the set of officers whom the defendant had in mind] ‘included law enforcement officers who were employed by the United States.’ ” Ibid, (emphasis in original). This description of my interpretation confuses what the prosecution must prove with what a rational jury may choose to infer in a particular case.
In order to violate § 1512(a)(1)(C), a defendant must have ' an intent regarding two things: first, the substance of the communication that the defendant wishes to prevent (information concerning, among other things, the commission or possible commission of a federal crime) and, second, the recipient of the communication (a law enforcement officer or judge who turns out to be a federal officer or judge).
It is true that evidence regarding the federal character of an offense may lead a rational jury to infer that the officers whom the defendant had in mind included federal officers.[2] *691 But those two elements remain distinct; both must be proved beyond a reasonable doubt; and it is entirely possible for a defendant to satisfy one without also satisfying the other. For example, if a uniformed federal officer came upon a defendant during the commission of a purely state offense (for example, a murder, assault, or rape not committed in a federal enclave), the defendant might kill or attempt to kill the officer to prevent the officer from radioing in that information to the officer’s superiors. This defendant would have the intent to prevent a communication to a federal officer, but there would be no violation of the statute because the information would not concern a federal crime. Thus, contrary to Justice Scalia’s suggestion, under my interpretation, the two intent elements — relating to the substance of the feared communication and the identity of the feared recipient — are not redundant.
Justice Scalia invokes a rule that disfavors the interpretation of a federal criminal statute in a way that “ ‘significantly ehange[s] the federal-state balance in the prosecution of crimes.’”[3] Ante, at 685 (quoting Jones v. United States, 529 U. S. 848, 858 (2000)). This rule, however, does not justify ignoring the plain terms of the statute.
* * *
The Court has effectively amended § 1512(a)(1)(C) by adding an element that is nowhere to be found in the text of the statute. And the Court’s new element makes little sense and will create confusion for trial judges and juries. Following the language of § 1512(a)(1)(C), I would hold that the evidence in this case was sufficient to establish all of the elements that Congress saw fit to include. I therefore respectfully dissent.

 The Court makes a related argument. See ante, at 676-677.

 There is nothing unusual about the proposition that the proof of one element of a crime may provide a sufficient basis for inferring that another element may be satisfied. To take a common example, overt acts committed in furtherance of a conspiracy may be sufficient to permit a jury to infer that a conspiratorial agreement was reached. But that does not alter the need to prove beyond a reasonable doubt that such an agreement was reached.

 The Court again makes a related argument. See ante, at 677.